992 F.2d 1217
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Patrick THORNTON, Plaintiff-Appellant,
v.
DENNY'S INCORPORATED, Defendant-Appellee.
 No. 92-1368.
 United States Court of Appeals, Sixth Circuit.
 April 29, 1993.
 
 Before MARTIN and SILER, Circuit Judges, and COFFIN, Senior Circuit Judge.*
 PER CURIAM.
 
 
 1
 Patrick Thornton appeals the district court's grant of summary judgment for Denny's Inc. in this employment dispute. Thornton alleged age discrimination, constructive discharge, retaliatory discharge for filing a workmen's compensation claim, and breach of a just-cause employment contract. For the following reasons, we affirm the district court.
 
 
 2
 In May 1983, Patrick Thornton, then forty-eight years old, applied for employment at Denny's, Inc. On his written application, Thornton indicated that he was willing to relocate. In June 1983, Thornton was hired by Denny's to be an assistant manager. For the first three months of employment, Thornton attended a manager-in-training program at the Twelve Mile & Woodward restaurant in Berkley, Michigan. He also assisted workers at three other Denny's restaurants in the area. After successfully completing the training program, Thornton was assigned to the only Denny's restaurant in Saginaw, Michigan. Thornton was supervised by Daniel Hoffman, the restaurant manager, and Michael Hartman, the district manager.
 
 
 3
 In 1988, Denny's management personnel changed in the area. Art Boudakian became the district manager for the district that contained the Saginaw restaurant. Hoffman resigned from his position, and George Dempsey, who had been in the same position as Thornton, was promoted to become the new restaurant manager. Thornton had a difficult working relationship with Dempsey, who initially gave Thornton a poor performance review. Boudakian intervened and scheduled another review, and Thornton met performance standards on the second review.
 
 
 4
 In 1989, Thornton refused to sign two critical memos regarding his work. The first memo discussed the occurrence of guests walking out on his shift. Thornton refused to sign the memo because he had brought the matter to his supervisor's attention. The second memo described a discrepancy on a deposit slip filled out by Thornton. Thornton admitted that he had made a mistake but had said that the problem had been corrected and that there was no need to document it.
 
 
 5
 In April 1989, Thornton injured his back while moving stock at Denny's. Thornton filed a workers' compensation claim and remained on disability leave through June 12. Because Denny's has a self-administered workers' compensation plan, Denny's incurred the full charge for Thornton's injury.
 
 
 6
 On June 22, Thornton's supervisors notified him that he was being transferred, without a reduction in pay, from the Saginaw location to a Denny's restaurant thirty miles away in Flint. The transfer was to take effect on July 5. Thornton refused to sign the transfer memo and reported to work in Saginaw on the transfer date. Denny's did not permit Thornton to work in the Saginaw restaurant that day, and Thornton went home. Robert Clayton, Denny's Human Resources Manager, called Thornton to discuss his objections. When Thornton mentioned travel expenses, Clayton offered to relocate Thornton to Flint at the company's expense or to compensate Thornton for travel expenses from home to the Flint restaurant, but Thornton refused these offers. At Thornton's request, Denny's also looked into the possibility of transferring Thornton to Las Vegas, Nevada or Wichita Falls, Texas. However, there were no available positions in these locations.
 
 
 7
 After Thornton refused to work in Flint, Clayton placed him on vacation and told him that if he did not begin working at the Flint restaurant by July 17, Denny's would terminate his employment for refusal to work. Thornton did not return to work at the Flint location, and Denny's ended his employment.
 
 
 8
 On February 28, 1991, Thornton filed a complaint in the Saginaw County Circuit Court in Michigan for wrongful discharge. On April 12, Denny's removed the case from the state court to the Michigan federal district court based on diversity of citizenship. Thornton's claim is based upon age discrimination, constructive discharge, retaliatory discharge for filing a workmen's compensation claim, and breach of a just-cause employment contract. Thornton's complaint seeks damages for wrongful discharge.
 
 
 9
 Upon proper motions, the district court granted summary judgment to Denny's and dismissed the case. On March 20, 1992, Thornton filed his notice of appeal.
 
 
 10
 Our first inquiry is whether the federal district court had jurisdiction to hear the merits of Thornton's case. Thornton contends that the district court lacked federal subject matter jurisdiction to hear the case because it arises out of Michigan workers' compensation law. Removal of state-law workers' compensation cases is prohibited even if there is diversity of citizenship. See 28 U.S.C. § 1445(c) ("a civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States"). However, we find that Thornton's claim does not arise under the Michigan worker's compensation law, Mich.Comp. Laws § 418.621 et seq. The worker's compensation statute provides neither the mechanisms nor the remedy for this type of suit. Consequently, the federal district court properly retained jurisdiction in this case because there is diversity of citizenship.
 
 
 11
 We now address the question of whether summary judgment was proper in this case. We review a grant of summary judgment de novo. Faughender v. City of North Olmsted, Ohio, 927 F.2d 909, 911 (6th Cir.1991). Under Fed.R.Civ.P. 56(c), summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.
 
 
 12
 Thornton contends that he has presented sufficient evidence to suggest that he may have been terminated as a result of age discrimination. Thornton alleges that Denny's discriminated against him on the basis of age in violation of Michigan's Elliott-Larsen Civil Rights Act, Mich.Stat.Ann. § 3.548 et seq. The Elliott-Larsen Act does not permit an employer to "discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term ... of employment because of ... age." To establish a prima facie case of age discrimination in violation of Michigan law, the plaintiff must present evidence that (1) he was a member of the protected class; (2) he was discharged; (3) he was qualified for the position; and (4) he was replaced by a younger person. Matras v. Amoco Oil Co., 424 Mich. 675, 385 N.W.2d 586, 589 (1986). In addition, the plaintiff must show that age was the determining factor in the employer's decision to take action against the plaintiff. Dubey v. Stroh Brewery Co., 185 Mich.App. 561, 564-65, 462 N.W.2d 758, 759-60 (1990).
 
 
 13
 Thornton has failed to demonstrate a prima facie case of age discrimination because he has failed to present sufficient evidence of discriminatory motive to survive a motion for a directed verdict, as required by Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Thornton attempted to provide statistical evidence to show that Denny's was motivated to take action against him because of his age. The testimony that Denny's forced Thornton, its only manager over age fifty, to accept a forced transfer is of little value because such action against one individual is to small a sample to have statistical value. In regard to his discharge, Thornton has presented no evidence to show that Denny's reason for the termination was even remotely based on age. The overwhelming evidence shows that Denny's reason for firing Thornton was that Thornton refused to go to work at the Denny's in Flint.
 
 
 14
 Thornton also contends that the transfer order constitutes constructive discharge. To show constructive discharge, plaintiff must present evidence that his working conditions were so intolerable that a reasonable person in the same situation would have felt compelled to resign. Held v. Gulf Oil Co., 684 F.2d 427, 432 (6th Cir.1982). In this case, Thornton admitted that there was little difference between the two restaurants, and Thornton was to receive the same salary. Therefore, the transfer was a lateral move, and Thornton failed to provide any indication of intolerable working conditions at either location. Consequently, he does not present evidence of constructive discharge which meets the Celotex standard.
 
 
 15
 Thornton also contends that a genuine issue exists regarding whether he was discharged in retaliation for filing a workers' disability compensation claim. To establish a prima facie case of retaliatory discharge, a plaintiff must demonstrate that (1) the plaintiff engaged in protected activity; (2) the employer knew of this; (3) the employer took an adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. Polk v. Yellow Freight Systems, Inc., 876 F.2d 527, 531 (6th Cir.1989). It is undisputed that Thornton engaged in protected activity by filing a workers' compensation claim and that Denny's was aware of this filing. However, the transfer to Flint was not an adverse employment action because Thornton would have received no reduction in pay and was offered reimbursement for relocation or commuting expenses. Even assuming that the transfer constitutes an adverse employment action, Thornton has failed to establish sufficient proof under Celotex that he was fired or transferred because he filed a workers' compensation claim.
 
 
 16
 Thornton also argues that he has put forward ample evidence to suggest that the forced transfer to Flint was actually an attempt to breach a just-cause employment contract and discharge him. A just-cause contract may be created either by expressed agreement or may result from an employee's legitimate expectations grounded in an employer's policy statement. Toussaint v. Blue Cross and Blue Shield, 408 Mich. 579, 599, 272 N.W.2d 880, 885 (1980). Thornton's claim is based on language in the employee handbook that was issued to Thornton at the start of his employment. The handbook provides that "all employees are treated equitably ... and that no one is terminated without just cause." Thornton failed to establish that Denny's breached a just-cause employment contract by attempting to transfer him. The just-cause language applied specifically to terminations, not to attempts to transfer. There is no evidence that Thornton was terminated for any reason other than failure to work in the Flint restaurant, and we have already decided that the transfer order does not constitute constructive discharge. Refusal to work is a just cause for termination of employment. Consequently, Thornton has not put forward sufficient factual evidence which could survive a motion for a directed verdict at trial regarding whether Denny's breached Thornton's employment contract.
 
 
 17
 The judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Frank M. Coffin, Senior Circuit Judge for the United States Court of Appeals for the First Circuit, sitting by designation