Karl D. BROCKLEHURST, Plaintiff,

v.

PPG INDUSTRIES, INC., a foreign
corporation, Defendant.

No. 92–CV–76429–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 18, 1993.

Order Modifying Opinion Nov. 23, 1993.

Jamil Akliter, Birmingham, MI, for plaintiff.

James R. Kohl, Detroit, MI, for defendant.

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ROSEN, District Judge.

## I. INTRODUCTION

Plaintiff, Karl Brocklehurst, a former employee of Defendant PPG Industries, Inc. ("PPG"), instituted this wrongful discharge and age discrimination action in Wayne County Circuit Court on October 2, 1992. Defendant timely removed the action to this Court on November 2, 1992, on diversity grounds.

## II. PROCEDURAL HISTORY

In his original two-count complaint, Mr. Brocklehurst alleged: (1) that PPG breached an employment contract when it terminated him on January 3, 1992; and (2) that PPG discriminated against him because of his age in violation of the Michigan Elliott–Larsen Civil Rights Act.

On July 23, 1993, Defendant moved for summary judgment on both counts pursuant to Fed.R.Civ.P. 56. Defendant contends that: (1) Plaintiff was an at-will employee; (2) Plaintiff has failed to establish a *prima facie* age discrimination case. Plaintiff filed responses opposing Defendant's Motion for Summary Judgment on July 30, August 10, and September 22, 1993. Defendant filed replies on August 9, August 19, and September 22, 1993.

Having reviewed the parties' respective briefs and the exhibits attached thereto, and having heard oral arguments on September 23, 1993, the Court is now prepared to rule on Defendant's Motion, and this Memorandum Opinion and Order sets forth that ruling.

### III. *FACTUAL BACKGROUND*

Plaintiff was recruited by Bart Coxon, a PPG executive, in May or June of 1984. At the time, Plaintiff was employed and was forty-one years old. Mr. Coxon requested that Plaintiff meet with him to discuss the possibility of his leaving his employer and coming to work for Defendant at less than his then $50,000 annual salary. Because of this possible cut in pay, Plaintiff wanted to know what type of job security he would have, and Mr. Coxon advised him that nobody was fired from PPG. Brocklehurst Deposition, p. 135. Within a month of meeting Mr. Coxon, Plaintiff met with the automotive group vice president, Fred Rhue, and the manager of coatings and resins, Edward Horvath. Plaintiff received an offer of employment at that time. Plaintiff filled out an employment application on June 18, 1984. A portion of the employment application indicated to the applicant "that misrepresentations will be considered as just cause for rejection of his application or dismissal from employment."

Defendant hired Plaintiff as a manufacturer's representative and soon promoted him to head PPG's Ford team. In 1988, Defendant consolidated its metropolitan Detroit operations at its Troy office and issued employees new employment handbooks. These employment handbooks made several pertinent declarations, encompassing the following concepts:

* PPG has a sincere interest in its employees' welfare and future. PPG expects each employee's best efforts in return. Employment Guide, Items 1 & 2.

* PPG encourages its employees not to unionize because all of its own programs, policies, and procedures have been designed to help employees meet their goals. Employment Guide, Item 7.

* At all times, PPG will work toward the interests of each and every employee and uphold its legal and ethical obligations. Employment Guide, Item 7.

* Low performance ratings may result in termination. Employment Guide, Item 15.

* All employees are considered on probation for the first six calendar months of employment; poor performance in this period may result in termination. Employment Guide, Item 17.

* A non-exhaustive list of unbecoming conduct could result in disciplinary action. Employment Guide, Item 21.

In September of 1991, Defendant, in order to maintain profitability, instituted certain economic cost reductions. These included the termination of about 200 employees and the elimination of some positions. Plaintiff's position was not among those scheduled to be eliminated.

Thomas Siegele, an executive with Defendant, indicated in his deposition that Defendant discharged those employees who, in comparison to other employees at their level, did not possess the strongest set of skills. He stated that this determination was based upon performance evaluations, rank order as to compensation, and managerial opinion. Siegele Deposition, p. 76. Kears Pollack, a PPG vice-president, further explained in his deposition that:

> Within each of these groupings of people that are roughly comparable in levels within the organization, we attempted to look at the total group of people and treat it much like the NFL would treat a necessity to go to a smaller roster. We tried to look at the organization as it would appear with the team of individuals that would be left after the necessary reduction in force took place....

Pollack Deposition, p. 69. Mr. Pollack and Mr. Horvath decided to fire Plaintiff, then age 48, and replace him with Phil Johnson, age 38, who at that time was Director of Automotive Marketing at PPG's Chemfil subsidiary. Pollack and Horvath allegedly determined that Plaintiff was not the most effective person for his job and that he lacked the ability to lead the Ford team into the future.

On January 3, 1992, Plaintiff met with Mr. Horvath who advised him that the Ford team needed new vitality and direction and that Plaintiff was being fired. Marv Leedom, manager of human resources, made notes of the meeting which reflect that Plaintiff was fired because the Ford team needed new

vitality and direction. PPG replaced Plaintiff with Mr. Johnson.

Just prior to oral argument, the Court asked counsel to provide it with information on the relative performance of Mr. Brocklehurst and Mr. Johnson. Information provid-. ed by counsel revealed the following. Plaintiff received two performance evaluations, the first in January of 1989 and the second in March of 1991. These evaluations placed employees in one of three grades: "Level 1— needs improvement; Level 2—fully meets job requirements; and Level 3—exceeds job requirements." Plaintiff's January 19, 1989 evaluation placed Plaintiff in Level 2, fully meets job requirements. The evaluation did note, however, that Plaintiff needed to improve relationships he had with customers and to exercise greater control over certain programs. Plaintiff's March 1, 1991 performance appraisal also placed Plaintiff in the Level 2, fully meets job requirements, category, but it added the following written statements by Mr. Horvath, Plaintiff's immediate supervisor:

> Karl and the Ford team had a very successful year in 1990 in sales, profitability and ROI [return on investment]. The PPG Ford team was rated # 1 in cash flow and profitability. Karl also maintained PPG as a single source supplier at Mazda.

> Karl faces a difficult task of strengthening our future position at Ford.

The court has reviewed Mr. Johnson's evaluations dated January 16, 1991, and January 10, 1992. The 1991 evaluation placed Mr. Johnson in Level 3, exceeds job requirements. However, in 1992, just a week after he replaced Mr. Brocklehurst, Mr. Johnson dropped to a Level 2 score, the same score Plaintiff received in 1989 and 1991. Plaintiff did not receive an evaluation in early 1992 because he was terminated.

In addition to the above evaluations, PPG also grades its employees on a 0–15 scale for its Incentive Compensation Plan. Mr. Brocklehurst received a 10, 9, and 8/7 for the years 1989, 1990, and 1991 respectively. Mr.

Johnson received a 14, 12, and 10 for those years respectively.

Finally, both parties submitted evidence on Mr. Brocklehurst and Mr. Johnson's dealings with their unit's chief customer, Ford Motor Co. Mr. Johnson and Mr. Pollack testified that T.J. Young, the top Ford executive who dealt with PPG, did not think very highly of Mr. Brocklehurst. Plaintiff for his part, however, submitted affidavits from Howard Payne, Design Manager of Ford's Color and Trim Department, and Donald Dopierala, a management employee in Ford's coatings and resins application process. Both men claimed that their dealings with Plaintiff demonstrated him to be an extremely competent representative of PPG Industries.

## IV. ANALYSIS

### A. THE STANDARDS GOVERNING CONSIDERATION OF A MOTION FOR SUMMARY JUDGMENT.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Three 1986 Supreme Court decisions— *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *and Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)—ushered in a "new era" in the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[1] According to the *Celotex* Court:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to

---

1. "Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out

frivolous lawsuits and avoid wasteful trials." 10A Charles A. Wright et al., *Federal Practice & Procedure,* § 2727, at 33 (Supp.1993).

that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment. They are summarized as follows:

\* Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

\* The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

\* The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

\* The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

\* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989) (footnotes omitted). The Court will apply the above principles in deciding the Defendant's motion for summary judgment in this case.

## B. *PLAINTIFF'S WRONGFUL TERMINATION CLAIM*

### 1. *Defendant's Arguments In Support Of Summary Judgment And Plaintiff's Counter–Arguments.*

In its motion for summary judgment and brief in support thereof, Defendant contends that Plaintiff was an at-will employee by virtue of having only an oral contract of employment for an indefinite term. Defendant claims that the Court must presume an oral contract of employment for an indefinite term is terminable at the will of either party. Furthermore, Defendant argues that there is testimony on the record which establishes that all of Defendant's employees are at-will employees. *See* Siegele Deposition, p. 67.

Plaintiff counters that he was not an at-will employee but rather had an implied just cause contract. He contends that in response to his request to know what job security he would receive if he left his old employer and came to work for Defendant, a PPG executive told him that nobody was ever terminated from PPG. Thus, Plaintiff insists that he was entitled to, and did, reasonably rely upon an oral statement made by Defendant which created a legitimate expectation of job security.

Moreover, Plaintiff argues that the positive performance appraisals he received from Defendant helped to create a legitimate expectation of being fired for just cause only. In addition, Plaintiff claims that provisions in the PPG employee handbook he received and on the employment application he completed create a question of fact as to whether Plaintiff had an implied just cause contract of employment. Plaintiff also argues that his successful completion of the six-month probationary period set out in the employee handbook provides further support for his claim that he was a just-cause employee.

In response to Plaintiff's counterarguments, Defendant asserts that the oral statement that Plaintiff allegedly relied upon is not clear and unequivocal. In addition, Defendant claims that Plaintiff cannot reasonably rely upon the written representations in the Employment Guide or his application because there is nothing in the documents which suggest that the enumerated conduct was the only basis for termination. Additionally, Defendant asserts that the mere existence of the probationary period does not establish a just cause contract. This is especially true for this case because the Employment Guide was not adopted until three

years after Plaintiff was hired; thus, Plaintiff completed his probationary period before the Employment Guide even went into effect. Defendant finally argues that even if Plaintiff had a just cause contract, he cannot assert a breach of contract claim because Defendant implemented an economically motivated reduction in force (RIF).

### 2. There Is No Material Issue Of Fact As To Whether Plaintiff Has A Just Cause Employment Contract.

Normally, oral contracts of employment for indefinite terms are terminable at the will of either party. *Lynas v. Maxwell Farms*, 279 Mich. 684, 273 N.W. 315, 316 (1937); *Snell v. UACC Midwest, Inc.*, 194 Mich.App. 511, 487 N.W.2d 772, 774 (1992). The Michigan Supreme Court, however, modified this rule in the seminal case of *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980). That case held that the presumption of employment-at-will may be overcome if a provision requiring just cause for the discharge of an indefinite term employee becomes "part of the contract, either by express agreement, oral or written, or as a result of an employee's legitimate expectations grounded in an employer's policy statements." Although after *Toussaint* Michigan courts have sometimes found implied just cause contracts, "[i]t is well settled that a mere subjective expectation on the part of an employee is insufficient to create a jury question as to whether an employment contract may be terminated only for just cause." *Grow v. General Prods., Inc.*, 184 Mich.App. 379, 457 N.W.2d 167, 169 (1990). Therefore, in this case to establish an implied just cause contract relationship Plaintiff must come forward with evidence of employer statements and policies that would persuade a reasonable fact-finder that he would be fired only for just cause.

In *Rowe v. Montgomery Ward & Co., Inc.*, 437 Mich. 627, 473 N.W.2d 268 (1991), the Michigan Supreme Court recently revisited the *Toussaint* doctrine. The plaintiff in *Rowe* argued that she had a just cause contract in part because the supervisor who hired her told her that the company did not fire salespeople so long as they met their sales quotas. 473 N.W.2d at 270. The plaintiff also asserted that a document entitled Rules of Personal Conduct, which laid out grounds for immediate discharge, supported her just cause claim. 473 N.W.2d at 270. Finally, the plaintiff relied upon a progressive discipline policy even though the employee manual that contained it included an at-will disclaimer. 473 N.W.2d at 270.

In analyzing a just cause claim, the *Rowe* court stated, "[to determine] whether a reasonable factfinder can find a promise of job security implied in fact, [a court should] look to all the facts and circumstances to evaluate the intent of the parties." 473 N.W.2d at 273. The *Rowe* decision specially noted the difficulty in evaluating oral statements implying just cause dismissal, and it held that "oral statements of job security must be clear and unequivocal to overcome the presumption of employment-at-will." 473 N.W.2d at 275. Ultimately, *Rowe* held that the statement made by plaintiff's supervisor that salespeople were not fired unless they did not sell was not clear and unequivocal. Instead, the court characterized the comment as "more akin to stating a policy as opposed to offering an express contract." 473 N.W.2d at 275. Similarly, the plaintiff could not rely on the Rules of Personal Conduct document because "[n]othing in the rules suggested that the enumerated conduct was the only basis for dismissal, and the rules were consistent with a termination-at-will policy." 473 N.W.2d at 275. The progressive discipline policy also did not support plaintiff's claim because of an express at-will disclaimer in the employee handbook containing the policy. 473 N.W.2d at 277.

Turning to the instant case, Plaintiff argues that he had a just cause contract on the basis of both oral representations and written policy statements. Looking at all the circumstances of Mr. Brocklehurst's hiring and employment with PPG, this Court concludes that no question of material fact exists as to whether Plaintiff enjoyed a just cause contract relationship with Defendant.

Plaintiff places much weight on Mr. Coxon's statement "No one ever gets fired at PPG." However, this is not clear and un-

equivocal language of a just cause *contract* between PPG and Plaintiff. Plaintiff admitted that Mr. Coxon did not have authority to hire him. Plaintiff's Deposition, p. 10. Indeed, Plaintiff was not hired by Mr. Coxon but was hired weeks after their recruiting conversation by Mr. Horvath and Mr. Rhue. Plaintiff's Brief, p. 2. Plaintiff does not allege that job security was even discussed during his meeting with Mr. Horvath and Mr. Rhue. Therefore, Plaintiff cannot claim that he negotiated a just cause contract with his employer when he was hired.

This case is thus distinguishable from the *Toussaint* line of cases. In *Toussaint* itself, the plaintiff engaged in extensive negotiations with the person who was to be his immediate supervisor and was told he would not be fired "as long as I did my job." 292 N.W.2d at 890. When the plaintiff made further inquiries about job security, he received an employment manual which specifically stated that he could be released "for just cause only." 292 N.W.2d at 891.

Clearly, no such explicit or implicit representations were made to Mr. Brocklehurst. He did not specifically negotiate for job security when he was hired, nor did he receive an employee manual stating that he had such job security.

▆▆▆ Plaintiff also relies upon PPG's Employment Guide. While the Guide does indicate that PPG will attempt to deal fairly with employees, such general statements do not rise to the level of creating a legitimate expectation of a just cause contract relationship. Nowhere does the Guide state that PPG will dismiss employees for cause only. Similarly, the Guide specifically notes that its list of conduct leading to discharge is not exhaustive. Employment Guide, Item 21.

The instant case is, therefore, more like *Rowe, supra*, in which the court found a similar non-exhaustive code of conduct insufficient grounds for a just cause contract because the code did not state that the prohibited conduct therein was the only basis for

dismissal. 473 N.W.2d at 275. Similarly, in *Biggs v. Hilton Hotel Corp.*, 194 Mich.App. 239, 486 N.W.2d 61, 62–63 (1992), the Michigan Court of Appeals also held that a disciplinary scheme which did not state it was exclusive did not modify an at-will employment relationship. The court further stated:

> We do not find it to be of any moment that the manual may not have explicitly stated that employment was at-will and that termination was not limited to those instances where just cause was shown.... [T]he presumption is that employment is at-will, and the proper inquiry is whether the employer, through its employment manual or otherwise, made representations or promises that termination would be only for just cause. No such representations were contained in this employment manual....

486 N.W.2d at 63.

▆▆▆ This Court agrees with the courts in *Biggs* and *Rowe* that a listing of prohibited conduct is simply not enough to overcome the presumption of at-will employment.[2] Moreover, it is not necessary for a manual to explicitly state that employment is at-will for an employer to counter arguments that discharge could only occur for just cause.

▆▆▆ Plaintiff further argues that his positive performance evaluations provide support for his claim of a just cause contract. This fact holds no legal relevance for the threshold analysis of the nature, *ab initio*, of the employment relationship between an employee and his employer.

Positive performance evaluations add nothing to illuminate a distinction between at-will and just cause relationships. For example, in *Diggs v. Pepsi–Cola Metro. Bottling Co.*, 861 F.2d 914, 917 (6th Cir.1988) (emphasis added), the Sixth Circuit stated "an appraisal system, standing alone, is insufficient to create a just cause contract. However, the fact that *the promise to retain Diggs' services as long as he performed satisfactorily was coupled with the appraisal system* raises the

---

**2.** Plaintiff also points to the statement on his employment application that a misrepresentation on it is just cause for dismissal. The Court is wholly unpersuaded that this single statement is sufficient to convert an entire relationship con-

sistent with at-will employment into a just cause contract. In addition, Plaintiff has offered no evidence that he relied upon the statement in his application when he joined and remained at PPG.

possibility that the employer waived the right to discharge Diggs at will." Because no such promise is evident on the facts of this case, the performance evaluations add nothing to Plaintiff's claim.

■ Finally, Plaintiff alleges that his successful completion of his probationary period converted his status from an at-will employee to a just cause employee. This is simply not the law in Michigan, even assuming that the Employment Guide's probationary policy applied to Plaintiff retroactively. *Kostello v. Rockwell Int'l Corp.*, 189 Mich.App. 241, 472 N.W.2d 71, 73 (1991) ("the mere existence of a probationary period does not give rise to a legitimate expectation of discharge for just cause only").

■ Even taking all of these factors together—Mr. Coxon's statement, the Employment Guide, Plaintiff's evaluations, the probationary period, and the language on his employment application that misrepresentations upon it were just cause for termination—the Court still is unpersuaded that there exists a material issue of fact as to whether Plaintiff had a just cause relationship. Mr. Brocklehurst may well have had a subjective expectation of just cause employment; but, as noted above, this is not enough to create a material issue of fact. Moreover, the Court will say that if simple notions of "fairness" governed this action, the outcome may be different on a dispositive motion. However, *Rowe* made clear that contract law, and not notions of "fairness," is what is at issue in overcoming the presumption of employment-at-will. *Rowe*, 473 N.W.2d at 269 ("[T]he [*Toussaint*] theory remains troubling because of those instances in which application of contract law is a transparent invitation to the factfinder to decide *not* what the 'contract' was, but what 'fairness' requires.") (emphasis in original). Plaintiff clearly had no express contract for just cause employment, and for the reasons stated above the factors Plaintiff lists, even when taken to-

gether, do not indicate he had a reasonable expectation of just cause dismissal as a result of employer statements and policies. Summary judgment on Plaintiff's wrongful termination claim is therefore appropriate.[3]

## C. *PLAINTIFF'S CLAIM OF AGE DISCRIMINATION*

### 1. *Defendant's Arguments In Support Of Summary Judgment And Plaintiff's Counter-Arguments.*

In its brief, Defendant argues that Plaintiff cannot make out a *prima facie* age discrimination claim because he cannot show that age was a determining factor in his termination. Defendant asserts that such a showing is necessary when economic retrenchment occurs.

Plaintiff contends that he has set forth a *prima facie* case of age discrimination because he was a member of the group the age law protects, he was qualified, he was fired, and his position was filled by a younger employee. In addition, Plaintiff argues that if the Court accepts Defendant's economic retrenchment argument and Plaintiff must then show that age was a determining factor in his discharge, Plaintiff still has demonstrated a *prima facie* case. Plaintiff claims that he was advised at the time of his firing that he lacked "vitality," thus suggesting that age was at the root of PPG's decision to discharge him.

### 2. *Plaintiff Has Established A Prima Facie Case of Age Discrimination.*

■ It is well-established that the burden is on an employment discrimination plaintiff to establish a *prima facie* case of discrimination. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 248, 101 S.Ct. 1089, 1091, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas* and *Burdine*, Plaintiff can establish a *prima facie*

---

**3.** Plaintiff correctly notes that Defendant cannot hide behind the argument that even if Plaintiff enjoyed a just cause contract PPG fired him for cause because of an economic reduction in force (RIF). For the reasons stated in Part IV.C.2, this is not a RIF case because Defendant replaced

Plaintiff rather than eliminate his job as part of a RIF. Nonetheless, because Plaintiff has not carried his burden to show a material fact on whether he had a just cause contract, his wrongful termination claim must be dismissed.

case of discrimination by showing that: (1) he was a member of a protected class; (2) he was discharged; (3) he was qualified for the position; and (4) he was replaced by a person outside the class.[4] In addition, the Michigan Supreme Court has recognized that to establish a *prima facie* case in a reduction in force (RIF) context, a plaintiff must also "present sufficient evidence on the ultimate question— whether age was a determining factor in the decision to discharge the older . . . employee." *See Matras v. Amoco Oil Co.*, 424 Mich. 675, 385 N.W.2d 586, 590 (1986); *Simpson v. Midland–Ross Corp.*, 823 F.2d 937, 941 (6th Cir.1987) ("Thus in cases of corporate reorganization a plaintiff must come forward with 'additional direct, circumstantial, or statistical evidence that age was a factor in his termination.'") (citation omitted).

■■■ However, as noted *supra*, n. 3, this is not a true RIF case. It is undisputed that Plaintiff's position was not eliminated. Rather, PPG discharged Plaintiff and replaced him with a younger employee. Support for this analysis exists in the case of *Barnes v. GenCorp.*, 896 F.2d 1457 (6th Cir.1990), *cert. denied*, 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171 (1990).[5] In *Barnes*, the court held that in a RIF situation a plaintiff can establish a *prima facie* age discrimination case only if he comes forward with evidence of discriminatory motive or shows that he had superior qualifications to retained employees. 896 F.2d at 1465–66. The court, however, carefully defined RIFs:

> A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. *An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge.* However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work

is redistributed among other existing employees already performing related work. An employee is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

896 F.2d at 1465 (emphasis added). Because PPG replaced Plaintiff, then, this is not a RIF case under *Barnes*. Therefore, in order to make out a *prima facie* case, Plaintiff need not come forward with any additional evidence indicating an illegitimate motive on the part of the employer over and above *McDonnell Douglas'* requirements. Given that PPG does not challenge Plaintiff's *prima facie* case on any grounds other than that he has not shown such additional facts hinting at age bias, this Court holds that Plaintiff has successfully made out a *prima facie* discrimination case.

### 3. Defendant Has Articulated A Legitimate Non-discriminatory Reason For Plaintiff's Discharge.

■■■ The United States Supreme Court has enunciated the shifting burdens in a discrimination suit once a plaintiff has made a *prima facie* case:

> [I]f the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." [ ] [S]hould the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093 (citations omitted). A defendant need not persuade the Court that it was motivated by the proffered nondiscriminatory reason. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1094. A defendant meets its burden by producing

---

**4.** The Sixth Circuit has stated that courts should use a case-by-case basis approach in evaluating *prima facie* cases of discrimination rather than apply *McDonnell Douglas* mechanically. *See Sahadi v. Reynolds Chem.*, 636 F.2d 1116, 1118 & n. 3 (6th Cir.1980). However, the *McDonnell Douglas* framework is still a useful test in evaluating cases like this one in which an employer replaces an older employee with a younger one.

**5.** Michigan looks upon federal discrimination precedent as persuasive authority. *See Sumner v. Goodyear Tire & Rubber Co.*, 427 Mich. 505, 398 N.W.2d 368, 376 (1986) ("It is [ ] appropriate that we, as we have done in past discrimination cases, turn to federal precedent for guidance in reaching our decision.") (footnote omitted).

evidence that raises a genuine issue of fact as to whether it discriminated against the plaintiff. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1094. However, to accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection.[6] The *Burdine* Court provided the rationale for this requirement:

> Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's *prima facie* case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext.

*Burdine*, 450 U.S. at 255–56, 101 S.Ct. at 1095.

■■■ Defendant claims that pursuant to its RIF it discharged those employees who, in comparison to other employees at their level, did not possess the strongest set of skills based upon performance evaluations, rank order as to compensation, and managerial opinion. Siegele Deposition, p. 76; Pollack Deposition, p. 69. Defendant also provided the Court with information on the relative performance of Mr. Brocklehurst and his replacement, Mr. Johnson. This evidence, recounted above, demonstrated that Mr. Johnson may have had a slight edge on the Plaintiff—but only a slight edge—in terms of written evaluations and incentive compensation rankings.

Thus, the Court believes the above evidence meets Defendant's burden to assert a legitimate non-discriminatory motive for its replacement of Plaintiff with a younger employee following a RIF: the other employee had superior skills. According to *Burdine*, the burden now shifts back to Plaintiff to rebut Defendant's reason with evidence that it was mere pretext for age discrimination. *See St. Mary's Honor Ctr. v. Hicks*, —— U.S. ——, —— ––––––, 113 S.Ct. 2742, 2746–50, 125 L.Ed.2d 407 (1993) (holding that while a showing that the defendant's reasons are pretextual may allow a factfinder to determine that unlawful discrimination occurred, such a finding is not compelled by law).

### 4. *Plaintiff Has Demonstrated That A Material Issue Of Fact Exists On The Issue Of Whether Defendant's Articulated Reason For Its Discharge Decision Was Pretextual.*

■■■ To meet his burden of showing Defendant's reason for his discharge is pretextual, Plaintiff relies primarily on the comment made to him when he was fired that the Ford team needed new "vitality." The Court notes that this term does not necessarily implicate age. However, the Court also believes that this statement, when considered alongside Mr. Johnson and Mr. Brocklehurst's rough parity in evaluations, presents a material issue of fact on whether PPG discriminated because of age.

Defendant argues that the Sixth Circuit and Michigan Supreme Court have already held that single, isolated comments indicating age bias are insufficient to support discrimination claims. This is true—as far as it goes. In *Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 314 (6th Cir.1989), the court held that a statement by plaintiff's supervisor to a large meeting that he "needed younger blood" was inadequate proof to survive a summary judgment motion. In the court's words: "Case precedent clearly reflects that isolated and ambiguous statements, of the nature allegedly made by [the supervisor] in the case at bar, 'are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination.'" 881 F.2d at 314 (quoting *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 n. 2 (6th Cir.1986) (two isolated statements by two different supervisors, one that "young people are taking over" and the other that the supervisor did not consider himself to be an "oldtimer," were insufficient grounds for age discrimination), *cert. denied*, 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987)). Similarly, in *Carpenter v. American Excelsior Co.*, 650 F.Supp. 933, 937 (E.D.Mich.1987), the court held that statements by plaintiff's supervisor

---

6. The Supreme Court has declared that "[a]n articulation not admitted into evidence will not suffice ... the defendant cannot meet its burden merely through an answer to the complaint or by argument of counsel." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1094.

that he wanted "young, mean and lean' salespeople and, on another occasion, that plaintiff felt ill because "he was not as young as he used to be" did not constitute enough evidence of age animus to survive summary judgment. Lastly, in *Matras v. Amoco Oil Co.*, 385 N.W.2d at 590, the Michigan Supreme Court held that an early evaluation of the plaintiff stating he was an aggressive young man, a nickname of "Gramps" given to plaintiff by co-workers, and an unwanted 40th birthday party thrown for plaintiff by his supervisor were insufficient bases for a finding of age discrimination.

However, the Court believes that this case is different from those cited immediately above in one fundamental and critical aspect. In *Gagne, Chappell, Carpenter,* and *Matras,* the comments indicating age bias occurred during the course of the employment relationship before discharge occurred. They were innocuous and diffuse. Although the comments may have indicated age bias among some employees in the workplace, they did not show a sufficient nexus between that bias and actual discharge decisions to pass summary judgment. In this case, however, the allegedly discriminatory statement—that the Ford team needed more "vitality" than Plaintiff provided—was given as *the* reason why PPG fired Plaintiff. Thus, although it was only a single statement, it was not unfocused or isolated. Rather it was given by Plaintiff's supervisor as the reason for the termination.[7] A jury could reasonably find that this comment indicated that Plaintiff was not fired because Mr. Johnson was more qualified but because Plaintiff was older. The rough parity in the evaluations of Mr. Brocklehurst and Mr. Johnson received from both PPG and Ford Motor Co. representatives would further support a finding that Defendant's claim that Mr. Johnson was more qualified for the job was mere pretext for age discrimination.

At least one other court has concluded that an allegedly discriminatory statement made at the time that an employee was fired was sufficient evidence of pretext to allow an age claim to survive summary judgment. In *Ox-*

*man v. WLS–TV,* 846 F.2d 448 (7th Cir. 1988), the plaintiff lost his news bureau manager job when the position was eliminated. Plaintiff's employer, a TV station, was also unwilling to make him a producer or find him another job. At the time of his discharge, plaintiff's supervisor told him that:

> the [TV news] business had grown very complex in recent years and that producers were under great pressure.... [I]f [the station] made [plaintiff] a producer on one of the shows, they'd know within a week that they'd find [plaintiff] unable to do the job and that [plaintiff] would then still be out of a job....

846 F.2d at 456. The court held that a reasonable jury could read this statement to demonstrate that the employer believed that the plaintiff could no longer handle the fast-paced world of TV news because of his age. A reasonable jury, therefore, could find that the employer was motivated by age bias when it fired the plaintiff. 846 F.2d at 456–57.

The comment in this case—given as *the* reason for discharge—is even more susceptible to such an interpretation than those in *Oxman.* At the time of his discharge, Mr. Horvath told Plaintiff that his job required more vitality. This statement, combined with the rough parity in the evaluations of Plaintiff and his replacement that are part of the record, creates a material issue of fact that Defendant discharged Mr. Brocklehurst because of his age. Therefore, summary judgment of this claim is not warranted.

## V. *CONCLUSION*

For the foregoing reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DE-CREED that Defendant's Motion for Summary Judgment with respect to Count 1, Breach of Contract, is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment with respect to Count 2, Age Discrimination in Violation of the Elliott–Larsen Civil Rights Act, is DENIED.

---

7. To understand the distinction between the comment in the instant case and those made in the "isolated comments" line of cases, one need only imagine if the Plaintiff here had been told, upon his termination, that the reason for his discharge was that he was "too old." Clearly, such a statement would not be unfocused or isolated.

## ORDER MODIFYING OPINION

On October 18, 1993, this Court entered an Opinion and Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment. The Court wishes to modify that Opinion and Order to reflect that, as part of his *prima facie* case of age discrimination under the Michigan Elliott–Larsen Civil Rights Act, Plaintiff must produce evidence that age was a determining factor in his discharge from Defendant PPG Industries, Inc. *See Thornton v. Denny's, Inc.,* 992 F.2d 1217, 1993 WL 137078, *2, 1993 U.S.App. LEXIS 10260, *6–7 (6th Cir. 1993); *Dubey v. Stroh Brewery Co.,* 185 Mich.App. 561, 462 N.W.2d 758, 759–60 (1990), *app. denied,* 437 Mich. 916 (1991). Therefore, the Court hereby incorporates this element into its discussion and analysis of a *prima facie* case of age discrimination under the Elliott–Larsen Act.

This does not change the result as the Court continues to believe that Plaintiff has produced sufficient evidence to create a genuine issue of material fact so as to survive summary judgment.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Court's October 18, 1993 Opinion and Order is MODIFIED as set forth above.