Rosemarie THOMAS, Plaintiff,

v.

**AUTUMN WOODS RESIDENTIAL HEALTH CARE FACILITY,**
Defendant.

Civ. A. No. 94–40538.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 31, 1995.

Terence K. Jolly, Matheson, Parr, Schuler, Ewald & Jolly, LLP, Troy, MI, for Plaintiff.

Michael J. Lebenbom, David Lebenbom Assoc., Troy, MI, for Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Plaintiff, Rosemarie Thomas, filed a complaint on July 8, 1994, alleging race discrimination in her termination from the Autumn Woods Residential Health Care Facility ("Autumn Woods"). Thomas' complaint is based on Michigan's Elliott–Larsen Civil Rights Act and Title VII of the Civil Rights Act of 1964. Presently before this court is the defendant, Autumn Woods' motion for summary judgment.

### I. Factual Background

On May 11, 1993, Rosemarie Thomas was terminated from her employment with Autumn Woods, a 330–bed licensed and Medicaid/Medicare certified nursing care facility in Warren, Michigan, for unsatisfactory work performance. Thomas was employed as a direct care technician ("DCT" or "nurse aid") and charged with the responsibility of assisting the residents at Autumn Woods with their daily activities, including feeding, dressing, grooming, changing beds, lifting residents in and out of bed and wheelchairs, and toileting. Thomas was hired on September 28, 1992 and was assigned at her request to the Medicare unit to take care of the residents in need of more intensive nursing care. Thomas requested the 12–hour shift on the "skilled" unit because that was where the most care was required.

At the time Thomas began her employment with Autumn Woods, she received Autumn Woods' "Manual for Hourly Employees," containing information on disciplinary action and grounds for discharge, and a detailed job description for DCTs. Thomas also signed acknowledgements that she received these documents and that she read and understood their contents. At her deposition, conducted on August 22, 1995, Thomas acknowledged that her job description required her to perform the following duties:

1. To answer patient call lights promptly.

2. To turn off all unnecessary lights.

3. To be cooperative with and have respect and obedience toward her superiors, to be prompt and dependable in performing her duties, to be able to follow instructions intelligently and accurately, and to be able to work well with others and understand directions.

4. To take the resident's vital signs within the first hour of the shift.

5. To make sure that food served to the residents was accessible to them, to wash their hands and faces after eating, and to help them with toileting.

6. To make sure that dirty laundry and linens were removed and promptly taken to the appropriate place and that the residents' environment was uncluttered, neat and safe.

7. To conduct herself at all times in accordance with the principle that the needs of the patients take precedence over the employees' needs, and to follow the directions of supervisors, even if she disagreed with them, and to take issue with the supervisor later, or risk disciplinary action.

Thomas also testified at her deposition that from the beginning of her employment at Autumn Woods, she understood that under the terms of the Manual for Hourly Employees, the following actions or omissions could result in disciplinary action up to and including discharge from employment:

1. Failure to follow a written or verbal job description.

2. .Failure to render a personal service to a resident, if the service was in the usual scope of the employee's duties or required by an emergency.

3. Failure to perform work efficiently.

4. Inattention to duties or wasting time.

5. Poor attendance or tardiness.

6. Deliberate refusal to obey orders or instructions of supervisors during work hours.

7. Failure to follow her schedule as required or refusing to do assignments.

8. Laziness or neglect of a resident, including forgetting to set up a food tray or to feed patients as needed.

As part of its motion for summary judgment, Autumn Woods has submitted eight written reports documenting individual instances in which Thomas violated the duties described above. These reports indicate that Thomas was disciplined for the following violations:

1. 10/31/92. Thomas was instructed to put a resident to bed before going to lunch but responded by stating "I have to go to lunch or they will leave me." Thomas was written up for failure to follow instructions from the charge nurse.

2. 12/29/92. Thomas failed to take vital signs in a timely manner, showed poor organization of skills, and failed to complete patient baths.

3. 1/26/93. Thomas went on break without answering a patient's call lights.

4. 2/10/93. A resident for whom Thomas was responsible was found sleeping on a table in the dining room, with her tray still on the food cart.

5. 2/28/93. Thomas failed to pass snacks and claimed to have forgotten them.

6. 4/23/93. Thomas was counseled regarding poor organization and poor approach to residents.

7. 4/26/93. Thomas failed to complete vital signs on residents.

8. 5/7/93. Upset residents for whom Thomas was responsible were found in bed at 11:30 a.m.

Thomas has not denied that these incidents occurred or that they may serve as grounds for discipline under Autumn Wood's Manual for Hourly Employees. Thomas also has not denied the existence of eighteen additional disciplinary reports detailing her tardiness and absenteeism. Finally, Thomas does not deny that, after several instances of counselling about her organizational skills, Autumn Woods moved her from the 12–hour shift in the skilled unit to an 8–hour shift on a unit for lighter care residents. This change was effective January 29, 1993 and was made in an attempt to help Thomas with her organizational skills and prioritization.

On May 11, 1993, Thomas was terminated based upon her record of repeated poor performance. On July 2, 1993, Thomas filed a

claim with the Michigan Department of Civil Rights ("MDCR") and the federal Equal Employment Opportunity Commission ("EEOC"), alleging that she was terminated because of her race. In the Charge of Discrimination, Thomas specifically alleged that a white staff nurse complained about her and that white employees were treated differently. Her allegations were based upon Title VII and the Elliott–Larsen Civil Rights Act.

On January 12, 1994, Thomas' administrative complaint with the MDCR and the EEOC was dismissed. The Notice of Disposition noted that Thomas had received seven written warnings regarding her work performance problems from seven different charge nurses, black and white. The dismissal also noted that, of the five other DCT's that were discharged for the same or similar reasons as Thomas, three were black and two were white. The dismissal further described that the white employees who were terminated had two written warnings on their records and the black employees who were discharged had four to five written warnings prior to discharge. The investigation conducted by the MDCR disclosed no evidence of unlawful discrimination against Thomas. The EEOC adopted these findings on April 6, 1994.

On September 5, 1995, Autumn Woods filed its motion for summary judgment, contending that Thomas' July 8, 1994, complaint fails to state a prima facie case of racial discrimination. Autumn Woods further submits that, even if Thomas could state a prima facie case, Autumn Woods would be entitled to judgment as a matter of law because it had an independent, legitimate and non-discriminatory reason for terminating Thomas' employment.

Thomas claims that summary judgment is inappropriate because her deposition testimony reveals that there is a question of fact as to whether she was disciplined for racial reasons. Thomas cites to portions of her deposition where she related instances in which she was called a "blonde bimbo," and "looked at" like a "dumb klutz" by her supervisor, a white woman. Thomas also asserts that her supervisor treated her differently even though she was doing good work, that her supervisor always checked up on her to see if she was doing anything wrong, and that her supervisor would "knit pick" her. Thomas also submits that she was discriminated against by two other nurses who were white and gay and who would "knit pick" her just before lunch or at break time. Thomas was unable to identify these nurses. These allegations, Thomas contends, are sufficient to establish a prima facie case of race discrimination.

## II. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the non-moving party would bear the burden of proof at trial. *Martin v. Ohio Turnpike Commission,* 968 F.2d 606, 608 (6th Cir.1992). As the Supreme Court has stated:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party. *60 Ivy Street Corporation v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). In other words, the disputed fact must be one which might affect outcome of the suit under the substantive law controlling the issue. *Henson v. National Aeronautics and Space Administration,* 14 F.3d 1143, 1148 (6th Cir.1994). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Accordingly, where a reasonable jury could not find that the non-moving party is entitled to a verdict, there is genuine issue for trial and summary judgment is appropriate. *Feliciano v. City of Cleveland,* 988 F.2d 649 (6th Cir.1993).

Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the non-moving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the non-moving party must present more than just some evidence of a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986):

> There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Consequently, the non-moving party must do more than raise some doubt as to the existence of a fact; the non-moving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991).

## III. Discussion

### A. *Legal Framework*

Thomas has premised her claim of race discrimination against Autumn Woods upon violations of the Elliott–Larsen Civil Rights Act and Title VII. The burden of proof in an employment discrimination case rests with the plaintiff to establish a prima facie case that her employment was adversely affected on the basis of race. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1972). This requires that the plaintiff establish by a preponderance of the evidence that (1) she was a member of a protected class; (2) she was subject to an adverse employment action; (3) she was qualified for the job; and (4) for the same or similar conduct she was treated differently than similarly situated non-minority employees. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Mitchell v. Toledo Hospital,* 964 F.2d 577, 582 (6th Cir. 1992); *Sisson v. Bd. of Regents of the Univ. of Michigan,* 174 Mich.App. 742, 746, 436 N.W.2d 747 (1989). The same analysis applies to claims brought under Title VII and the Elliott–Larsen Civil Rights Act. *Brocklehurst v. PPG Industries, Inc.,* 836 F.Supp. 1354 (E.D.Mich.1993).

Critical to a plaintiff's case are the third and fourth elements of this test. To demonstrate that she is qualified, a plaintiff must show that she was performing her job to the satisfaction of her employer. *Ang v. Procter & Gamble Co.,* 932 F.2d 540, 548 (6th Cir.1991). A plaintiff may not create an issue of fact by challenging the soundness or wisdom of her employer's business decision. *Ang,* 932 F.2d at 549; *see also Wilson v. Communications Workers of America,* 767 F.Supp. 304, 307 (D.D.C.1991) (concluding that where a plaintiff fails to establish that her qualifications were similar to the qualifications of non-protected class employees, summary judgment in favor of the employer is appropriate). To satisfy the fourth element of this test, the plaintiff must demonstrate that the individuals to which the plaintiff is comparing herself dealt with the same supervisor, were subject to the same standards and were engaged in the same conduct

"without such differentiating or mitigating circumstances that would distinguish their conduct of the employer's treatment of them." *Mitchell,* 964 F.2d at 583.

■ If the plaintiff presents a prima facie case of unlawful discrimination, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment decision. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. Once the employer proffers evidence sufficient to carry this burden, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were merely a pretext for a unlawful discrimination. *Ang,* 932 F.2d at 548. To establish that the employer's stated reason is merely a pretext, the plaintiff must show by a preponderance of the evidence that the employer's reason is false and that discrimination was the real reason for the decision. *St. Mary's Honor Center v. Hicks,* 509 U.S. ——, ——, 113 S.Ct. 2742, 2753, 125 L.Ed.2d 407 (1993).

■ As an alternate theory of recovery, the plaintiff may attempt to prove intentional discrimination by presenting credible, direct evidence of discriminatory intent on the part of the decision-maker. *Terbovitz v. Fiscal Court of Adair County,* 825 F.2d 111 (6th Cir.1987). To establish a claim of intentional discrimination, the plaintiff must show (1) that she was a member of a protected class, (2) she was discharged, and (3) the person responsible for the termination decision was (a) predisposed to discriminate against persons in the protected class and (b) actually acted on that predisposition in the discharge decision. *See Thomas v. Hoyt, Brumm & Link, Inc.,* No. 93–CV–74344–DT, 910 F.Supp. 1280 (E.D.Mich., October 14, 1994) (slip opinion).

## B.  Analysis

■ Thomas has failed to allege facts sufficient to establish a prima facie case of unlawful discrimination. Although she comfortably fits the definition of a protected party under Title VII and Elliott–Larsen and was clearly subject to an adverse employment action, Thomas has not offered any evidence to prove that she was either qualified for the job or that she was treated differently than similarly situated non-minority employees. Indeed, Thomas' deposition testimony and the facts adduced by Autumn Woods overwhelmingly indicate that the opposite is the case.

■ Thomas admits to numerous violations of the terms of her job description and the Manual for Hourly Employees, which she signed and understood at the commencement of her employment in September, 1992. These violations are catalogued by the numerous written disciplinary reports filed by the various charge nurses at Autumn Woods. Moreover, Thomas admits that she cannot dispute the findings of the MDCR and the EEOC that these disciplinary reports were filed by black and white supervisors. Nor can she dispute that, of the other 5 DCT's who were terminated for similar conduct, two were white and three were black. In light of the MDCR's finding that approximately 90% of the 145 DCTs at Autumn Woods during Thomas' employment were black, it would be difficult to conclude that Thomas was treated differently than non-minority employees. Thomas simply has failed to satisfy the fourth element of the test for disparate treatment.

■ Thomas also fails to present evidence showing that she was qualified for her position at Autumn Woods. Thomas admits in her deposition testimony that Autumn Woods believes that she did not perform up to the standards expected of her. The twenty-six individual disciplinary reports issued to Thomas during the course of her eight months at Autumn Woods are strong evidence that Thomas was not performing to the satisfaction of her employer.[1]

■ Assuming that the modest evidence presented by Thomas sufficed to state a prima facie case of unlawful discrimination, summary judgment is nonetheless appropriate because Autumn Woods has articulated a

---

1. It cannot be said, and Thomas does not allege, that the expectations of that position were inordinate or excessive, particularly in light of the accommodation made by Autumn Woods to allow Thomas to work the less demanding eight hour shift on the unit for lighter care residents.

legitimate non-discriminatory reason for terminating Thomas, namely, Thomas' continued unsatisfactory work performance after receiving seven warnings for clear violations of policy. Thomas has not presented any evidence, other than her accusations, that this reason is a pretext for a decision which was in reality racially premised. Accordingly, summary judgment is appropriate.

 As to any claim of intentional discrimination, Thomas similarly fails to satisfy the burden of establishing a prima facie case. Thomas offers instances of only one employee discriminating against her by "knit picking" and calling her names such as "blond bimbo." Even if this court construed the references to a "blond bimbo" as a racial epithet (which even Thomas does not allege), it would not suffice to make out a prima facie case, because isolated incidents of derogatory epithets are not sufficient to establish a case of intentional discrimination. *See e.g. Gagne v. Northwestern National Insurance Co.*, 881 F.2d 309, 314 (6th Cir.1989). Moreover, because the remarks were not made by the individual responsible for the decision to terminate Thomas, these remarks do not demonstrate that the decision was based upon a predisposition to discriminate as required by the third element of the test. Accordingly, summary judgment is also appropriate on the issue of intentional discrimination.

### *ORDER*

Therefore, it is hereby **ORDERED** that Defendant, Autumn Woods Residential Health Care Facility's motion for summary judgment is **GRANTED.**

**IT IS FURTHER ORDERED** Plaintiff, Rosemarie Thomas' complaint be **DISMISSED** in its entirety with prejudice.

**SO ORDERED.**

### *JUDGMENT*

This action came before the court, the Honorable Paul V. Gadola, District Judge presiding, and the issues having been fully presented and the court being fully advised in the premises, and a decision having been duly rendered,

**IT IS ORDERED AND ADJUDGED** that the plaintiff, Rosemarie Thomas, take nothing in this action against the defendant, Autumn Woods Residential Health Care Facility, and that the claims be dismissed with prejudice.

**IT IS FURTHER ORDERED** that the clerk of this court serve a copy of this judgment by United States mail on counsel for the parties named in the caption above.

**SO ORDERED.**