**Karl D. BROCKLEHURST, Plaintiff,**

v.

**PPG INDUSTRIES, INC., Defendant.**

**No. 92–CV–76429–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 26, 1994.

James Akhter, Birmingham, MI, for plaintiff.

Ernest Bazzana, Detroit, MI, for defendant.

*OPINION AND ORDER DENYING DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR NEW TRIAL BUT GRANTING REMITTITUR*

ROSEN, District Judge.

## I. *INTRODUCTION*

Plaintiff sued Defendant for wrongful discharge and age discrimination in violation of Michigan's Elliott–Larsen Civil Rights Act. Plaintiff's suit arose from his termination of employment as the marketing director of PPG's team serving Ford Motor Company on January 3, 1992. He was 48 years old at the time that he lost his job at PPG. On July 23, 1993, Defendant moved for summary judgment, which this Court granted as to the wrongful discharge claim but denied with respect to the age discrimination claim. *See Brocklehurst v. PPG Indus., Inc.,* 836 F.Supp. 1354 (E.D.Mich.1993).

This case was tried to a jury on November 16–December 6, 1993, and it returned a verdict for Plaintiff of $1,527,100.00 ($77,100 in back pay, $500,000 in past non-economic compensatory damages, $700,000 in front pay, and $250,000 in future non-economic compensatory damages). On February 4, 1994, this Court entered judgment for Plaintiff in that amount. Defendant filed a renewed motion for judgment as a matter of law or for new trial on February 18. Plaintiff responded on March 4, and Defendant replied on March 11. Having reviewed these pleadings, and after hearing oral argument from counsel on June 2, this Court is now prepared to rule on Defendant's motion. This memorandum opinion and order sets forth that ruling.

## II. *DISCUSSION*

### A. *STANDARDS THAT THIS COURT WILL APPLY.*

■ While a district court has authority to grant a judgment notwithstanding the verdict to protect against completely unjust and unsupported results, this authority is strictly limited. *Douglass v. Eaton Corp.,* 956 F.2d 1339, 1343 (6th Cir.1992). The court may not consider the weight or the credibility of the evidence, nor may it substitute its own judgment for that of the jury. *Littlejohn v. Rose,* 768 F.2d 765, 770 (6th Cir.1985), *cert. denied,* 475 U.S. 1045, 106 S.Ct. 1260, 89 L.Ed.2d 570 (1986).

As the Sixth Circuit explained in *Douglass, supra:*

It is not enough that the district court disagrees with the verdict. Rather, a judgment notwithstanding the verdict "may be granted only if, viewing the admissible evidence most favorable to the

party opposing the motion, a reasonable trier of fact could draw only one conclusion." *Hill v. Spiegel, Inc.,* 708 F.2d 233, 237 (6th Cir.1983)....

\* \* \* \* \* \*

... We agree with the New Mexico Supreme Court that "[a] motion for judgment notwithstanding the verdict, like a motion for directed verdict, does not raise questions relating to the competency or admissibility of evidence. Therefore, in considering a motion for judgment notwithstanding the verdict, the evidence must be taken as it existed at the close of trial...."

956 F.2d at 1343–1344 (quoting *Townsend v. United States Rubber Co.,* 74 N.M. 206, 209, 392 P.2d 404, 406 (1964)).[1]

With respect to both motions for new trial and motions for remittitur, it is well-established that such motions are matters addressed to the sound discretion of the trial court. *Farber v. Massillon Bd. of Educ.,* 917 F.2d 1391, 1395 (6th Cir.1990), *cert. denied,* 501 U.S. 1230, 111 S.Ct. 2851, 115 L.Ed.2d 1019 (1991); *Bruner v. Dunaway,* 684 F.2d 422, 425 (6th Cir.1982), *cert. denied sub nom. Bates v. Bruner,* 459 U.S. 1171, 103 S.Ct. 816, 74 L.Ed.2d 1014 (1983); *National Polymer Prods., Inc. v. Borg–Warner Corp.,* 660 F.2d 171, 178 (6th Cir.1981). As such, the trial court's decision on such post-trial motions will not be disturbed on appeal unless it is determined that the court abused its discretion. *In re Lewis,* 845 F.2d 624, 635–636 (6th Cir.1988).

To guide trial courts in exercising their discretion, the Sixth Circuit has set forth the following standards for motions for new trial based on the ground that the verdict is against the weight of the evidence:

In ruling upon a motion for new trial based on the ground that the verdict is against the weight of the evidence, a district court must compare the opposing proofs and weigh the evidence ..., and "it is the duty of the judge to set aside the verdict and grant a new trial, if he is of the opinion that the verdict is against the clear weight of the evidence...."

\* \* \* \* \* \*

[However,] "courts are not free to reweigh the evidence and set aside the jury verdicts merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." ... Thus, while the district judge has a duty to intervene in appropriate cases, the jury's verdict should be accepted if it is one which could reasonably have been reached.

*Bruner,* 684 F.2d at 425 (quoting *TCP Indus., Inc. v. Uniroyal, Inc.,* 661 F.2d 542, 546 (6th Cir.1981) (citations omitted)).

With respect to remittitur, the Sixth Circuit has recently stated:

Such a motion should be granted only "if the award *clearly* exceeds 'the amount which, under the evidence in the case, was the maximum that a jury could reasonably find to be compensatory' for the plaintiff's loss." *In re Lewis,* 845 F.2d 624, 635 (6th Cir.1988) (quoting *Manning v. Altec, Inc.,* 488 F.2d 127, 133 (6th Cir.1973)).

*Roush v. KFC Nat'l Mgt. Co.,* 10 F.3d 392, 397 (6th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 56, 130 L.Ed.2d 15 (1994) (emphasis added in *Lewis* ).

The Court will apply the foregoing standards in deciding Defendant's motion in this case.

**B.  SUMMARY OF DEFENDANT'S ARGUMENTS.**

Defendant makes eight arguments in favor of its motion. First, it argues that as a matter of law there was no age discrimination in Plaintiff's termination. In other words, Defendant contends that there were insufficient facts of age bias in this case to warrant submission of the issue to a jury.

---

1. An appellate court is bound by the same standard as the district court; that is, it may not grant a judgment notwithstanding the verdict unless "after viewing the evidence and drawing all reasonable inferences in favor of the opposing party, [the appellate court finds] that the evidence points so strongly in favor of the movant that reasonable minds could not come to a different conclusion." *Hill v. Spiegel, Inc.,* 708 F.2d 233, 237 (6th Cir.1983); *Douglass,* 956 F.2d at 1345.

Second, Defendant asserts that even if there was a jury-submissible issue of age discrimination, the clear weight of the evidence suggested that PPG fired Plaintiff for legitimate business reasons. Third, Defendant posits that the Court should order a new trial because it erroneously instructed the jury with respect to PPG's business judgment and the fairness of its decision. Fourth, Defendant contends that because Plaintiff was an at-will employee, he is not entitled to economic damages of any kind. Fifth, Defendant argues that this Court erred by not finding that front pay was an appropriate remedy prior to submission of the issue to the jury. Sixth, Defendant asserts that because Plaintiff gained higher-paying employment shortly after he was terminated and while he was receiving severance benefits, he is not entitled to any back or front pay damages. Seventh, Defendant contends that the award of $750,000 in pain and suffering damages was clearly excessive and should at least be remitted. Eighth, and finally, Defendant argues it is entitled to a new trial on the issue of future damages because the Court failed to give the proper instruction on reducing those damages to present values. The Court will address each of these arguments in turn.

## C. *THE VERDICT OF LIABILITY WAS SUPPORTED BY THE EVIDENCE.*

█ The Court believes, despite Defendant's protests to the contrary, that the finding of liability for age discrimination was supported by the evidence. In its summary judgment opinion, the Court held that there was a material question of fact on age bias created by the explanation given to Plaintiff for his discharge: that the Ford team needed "new vitality and direction." *See* Plaintiff's Ex. 7. The Court ruled that a reasonable jury could find that the use of the term "vitality" indicated the presence of age animus, especially when considered in light of the fact that Plaintiff was replaced by Phil Johnson, a man ten years his junior, who had roughly equal evaluations. 836 F.Supp. at 1357, 1364.

At the close of Plaintiff's proofs, the Court considered a motion for directed verdict by Defendant. In reviewing that motion, the Court stated that it was close to granting Defendant's request because it believed that the proofs demonstrated that "vitality" was a term of art at PPG which was not used in an age-related way. The Court based this conclusion on the fact that Plaintiff's job description and performance evaluations contained the term "vitality" with respect to PPG *sales* to Ford. *See* November 24, 1993 Tr. 118–19. *See also* Defendant's Ex. 9 (job description); Plaintiff's Exs. 2–3 (1989 and 1991 evaluations of Plaintiff). The Court also noted that it could not find any other competent evidence that age was a determining factor in the decision to discharge Plaintiff.

The Court nonetheless denied Defendant's motion for directed verdict because Plaintiff brought to the Court's attention the fact that Kears Pollack, PPG's vice-president for automotive products and the person who on November 21, 1991, made the final decision to terminate Plaintiff, answered "Yes" to the question "[Y]ou did have conversations with Mr. [Thomas] Siegele [PPG's manager for human resources in the automotive products division] as it relates to potential problems with age discrimination claims, didn't you?" *See* November 19, 1993 Tr. 59. The Court decided that this testimony precluded the grant of a directed verdict in light of the holding in *Moody v. Pepsi–Cola Metro. Bottling Co.*, 915 F.2d 201, 209 (6th Cir.1990) (noting that word "age" written next to plaintiff's name on personnel plans was some evidence that the employer's claim that a reduction-in-force caused plaintiff's discharge was a mere pretext for discrimination). The Court, therefore, ordered that Defendant put on its proofs to further develop the scope, context and results of any discussion Mr. Pollack and Mr. Siegele may have had about possible age discrimination claims arising from the termination decisions made on November 27, 1991.

With the close of all the proofs, it turned out that the conversations between Mr. Pollack and Mr. Siegele regarding possible age discrimination claims were largely innocuous. Sometime in December, 1991, shortly after Mr. Pollack had decided on November 27, 1991, who would be terminated but before those decision were effected, he asked Mr.

Siegele, a non-lawyer, if the termination decisions had any adverse impact on PPG employees in terms of age, race or sex. November 29, 1993 Tr. 40–45.[2]

However, upon questioning by the Court, Mr. Pollack and Mr. Siegele both admitted that all of the managers at Plaintiff's level who were terminated with him in early 1992 were over 40. Specifically, Mr. Pollack testified as follows:

THE COURT: Mr. Pollack, in the termination decisions that you made as to managers at Mr. Brocklehurst's level or above, were there managers who were under 40 years old?

THE WITNESS: I'd have to double check. Yes.

THE COURT: And who were those managers?

THE WITNESS: Richard Rurak and Richard—No he was not under 40. I'm sorry. Richard Beuke.

THE COURT: Richard Rurak?

THE WITNESS: No, Richard Rurak was not under that age. Richard Beuke, according to the chart, was under that age.

THE COURT: Was he the only one under 40 who was terminated? I'm talking about of the termination decisions that you personally made, of the termination decisions that you personally made, focusing on manager's at Mr. Brocklehurst's level and above, were any of the managers under 40 years old?

THE WITNESS: Were there any managers under 40 that were terminated?

THE COURT: Of the decisions that you made or that you recommended. Even if they did not ultimately get made. Even if they were not ultimately terminated, of the decisions that you made—

THE WITNESS: Of the decisions that I made, personally, Gary Lininger was 41, Max Howells was 44 and Mr. Brocklehurst was 48.

THE COURT: Those are the only termination decisions you made?

THE WITNESS: Those are the only ones that I personally made as opposed to endorsing.

THE COURT: Of the ones that you endorsed or approved, were there any that were under 40 years old?

THE WITNESS: Oh yes, I'm certain. But I'd have to look.

THE COURT: I am talking about at the level of the manager that Mr. Brocklehurst [—]

THE WITNESS: No, not at that level.

THE COURT: Not at that level?

THE WITNESS: No.

THE COURT: Would there have been termination decisions made that you approved at the managerial level, even [if] it was just slightly below Mr. Brocklehurst, of people who were under 40 years old?

THE WITNESS: I would have to check the record. I don't have any recollection of that.

THE COURT: So, to your recollection, of the termination decisions that were made, of management level people that you approved, you cannot recall any that were under 40 years old?

THE WITNESS: Not that satisfy all those conditions, no, I cannot.

THE COURT: And how many of these termination decisions were there?

THE WITNESS: I believe that ultimately the total number was about 80 individuals. The total in the managerial level area that we have talked about the last couple of days, there were fewer than ten.

THE COURT: And in this group of fewer than ten we're talking about, those were the ones that you approved at the managerial level?

THE WITNESS: Well, I—at the managerial level, those are the ones that I approved, yes.

THE COURT: And as far as you can testify here, none of those people were under 40 years old?

**2.** Because the Court does not now consider these statements probative of age bias, it need not address Defendant's argument that it was found liable merely for trying to comply with employment discrimination laws.

THE WITNESS: As far as I know. At the time I made—

THE COURT: At the time of the termination?

THE WITNESS: Right. At the time of the termination, at the time I made the decision, I frankly didn't know the ages of any individual.

November 30, 1993 Tr. 57–60.[3]

Mr. Siegele, for his part, offered the following corroborative testimony upon examination by the Court:

THE COURT: ... Well, let me ask a question. Would you look at Defendant's Exhibit 1, please?

Mr. Akhtar, you're closest to it. Would you take that off—I think that's Defendant's—the blowup.

\* \* \* \* \* \*

Those are all of the management people under Mr. Pollack?

THE WITNESS: The top section? Okay.

THE COURT: Well, either directly or indirectly under Mr. Pollack?

THE WITNESS: That's right.

THE COURT: Of all those people there—Just for the record, I counted 25. Maybe I'm off by one or two—how many were terminated?

THE WITNESS: I believe there were four.

THE COURT: Were any of those people under 40 that were terminated?

THE WITNESS: No.

THE COURT: Any followup, Mr. Akhtar?

MR. AKHTAR: No, your honor.

THE COURT: Mr. Kohl?

MR. KOHL: Just one.... How many were replaced by older individuals where there were replacements?

A. Two of them.

December 3, 1993 Tr. 38–39.

The Court believes that the quoted testimony supports a reasonable inference that age was a determining factor in Mr. Pollack's decisionmaking process with respect to which PPG managers would stay and which would go. The fact that none of the managers at Mr. Brocklehurst's level who were terminated were under 40—the cutoff age for age discrimination as recognized under federal law[4]—could lead a reasonable jury to con-

---

**3.** Defendant argues that Mr. Pollack's testimony that he did not know the ages of the employees he decided to terminate at the time he made the decisions vitiates a finding that age played a determining factor in those decisions. PPG relies upon *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955 (5th Cir.1993), a case in which the Fifth Circuit rejected plaintiff's argument that the defendant/employer's reasons for terminating him (i.e., a workforce consolidation was in effect and plaintiff had inferior skills to those retained) were not believable. Plaintiff relied on the fact that the person who fired him (a Mr. Hartman) filed an incorrect affidavit stating that other older as well as younger employees were let go. The court reasoned:

This misstatement, Bodenheimer argues, renders the evidence unreliable, thereby creating a genuine factual issue. Bodenheimer's reasoning is unpersuasive. The degree of impeachability of evidence at this stage is irrelevant. *St. Mary's [Honors Ctr. v. Hicks*, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)] directs us to avoid making any credibility demonstrations at this stage because "the burden-of-production determination necessarily *precedes* the credibility-assessment stage." *St. Mary's*, [—— U.S. at ——] 113 S.Ct. at 2748 (emphasis in original).

5 F.3d at 958. In a footnote, the Fifth Circuit went on to say:

Bodenheimer's reasoning is also counterproductive. Hartman's misstatement leads us to conclude that Hartman did not know the ages of the terminated employees, which buttresses *PPG's claim* that age was not a factor in Bodenheimer's termination. To avoid summary judgment, Bodenheimer must create the *opposite* factual issue: Hartman knew their ages, and such knowledge was a factor in terminating Bodenheimer.

5 F.3d at 958 n. 6 (emphasis in original).

The instant case, in contrast to *Bodenheimer*, had passed to the credibility-determining stage when Mr. Pollack offered his testimony on whether he knew the ages—either actual or approximate—of the people that he decided to terminate. Thus, the jury was free to discredit this testimony when it was presented to them. As will be discussed below, the Court believes that the jury had good reason to do exactly that.

**4.** Defendant argues that the use of "over–40" analysis relies upon federal age discrimination law and not the Elliott–Larsen Civil Rights Act. In response, the Court merely refers Defendant to the numerous cases in which Michigan courts have relied upon federal employment discrimina-

clude that age was indeed an unspoken consideration in Mr. Pollack's mind at the time that he decided to fire Plaintiff and his colleagues.[5]

The Court also believes that the jury had before it sufficient evidence to find that Defendant's alleged legitimate, non-discriminatory reason for discharging Plaintiff was unsupported by the record. Mr. Pollack testified that, essentially, he did not think Plaintiff was as good a manager as others at his level. *See* November 29, 1993 Tr. 39. However, there was abundant evidence that Plaintiff was a competent manager of the Ford marketing team, both in the form of written evaluations and in the form of testimony of Plaintiff's accomplishments at PPG. *See, e.g.,* Plaintiff's Exs. 2 & 3 (Plaintiff's positive 1989 and 1991 evaluations); November 17, 1993 Tr. 151 (Mr. Horvath, PPG's director of automotive marketing and Plaintiff's immediate supervisor, testified that the Ford team ranked first among PPG teams in 1990 in terms of cash flow and profitability); November 19, 1993 Tr. 19–23 (Mr. Pollack admitted that the Ford team had a good year in terms of profits in 1991 and had improved over 1990); November 29, 1993 Tr. 75 (Mr. Pollack admitted that Plaintiff had made significant sales contributions to PPG, including the acquisition in late 1991 of a long-term contract to supply virtually all of the paint products used for Ford truck production in Kansas City, Missouri). It was distinctly the province of the jury in this case to weigh the competing evidence of Plaintiff's performance such as that above, and the Court believes that the jury's decision that Defendant's proffered reason for terminating Plaintiff was a pretext for age discrimination was well within the facts presented.

This is especially so when the Court takes into consideration the credibility of the witnesses. The Court cannot help but comment that it found the testimony of Defendant's witnesses in general to be pat, rehearsed and evasive. Mr. Pollack, the man who decided to terminate Plaintiff, was particularly hesitant and uncomfortable in answering questions. The demeanor of Mr. Siegele, the chief personnel representative for PPG, on the witness stand appeared to the Court to be, at times, callous, arrogant, and lacking in all sensitivity.

It is clear from the verdict that the jury simply did not believe Defendant's version of events. Given the demeanor of PPG's witnesses on the stand, the ample evidence that Mr. Brocklehurst was a competent manager whose team performed well vis-a-vis other PPG teams, and the evidence of age bias found in the fact that none of the terminated managers at Plaintiff's level was under 40, the Court cannot say that the record does not support a verdict that Defendant's proffered reason for discharging Mr. Brocklehurst was a mere pretext for age discrimination. *See St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2754, 125 L.Ed.2d 407 (1993) (noting that a discrimination plaintiff can only prevail if he shows that the defendant's proffered reason for the adverse employment decision was *a pretext for discrimination,* and not simply that it is unbelievable).

None of the cases that Defendant cites in support of its argument that there was insufficient evidence of discrimination to support the verdict persuade the Court. All of these cases stand for the proposition that "[e]vidence that a competent older employee was terminated, and a younger employee was retained, is insufficient standing alone to estab-

tion cases as guides in interpreting Michigan's own discrimination act. *See, e.g., Sumner v. Goodyear Tire & Rubber Co.,* 427 Mich. 505, 398 N.W.2d 368, 376 (1986) ("It is [] appropriate that we, as we have done in past discrimination cases, turn to federal precedent for guidance in reaching our decision.").

5. Defendant also stresses that Mr. Siegele's testimony that two of the four terminated managers were replaced by older employees undermines a finding of age bias in the discharge of Plaintiff. *See* December 3, 1993 Tr. 39. Defendant further

suggests in its reply brief that with respect to the three managers other than Plaintiff who were terminated, one was not replaced; another, who was 41, was replaced by a 48 year old; and the third, who was 44, was replaced by a 46 year old. *See* Defendant's Ex. 2; December 1, 1993 Tr. 89–98. While these facts clearly go to the weight that the jury could give to the fact that all four terminated managers were over 40, the Court does not believe that they eliminate a reasonable inference that age was a motivating factor in these decisions.

lish a *prima facie* case when the employer reduces his workforce because of economic necessity." *Matras v. Amoco Oil Co.*, 424 Mich. 675, 385 N.W.2d 586, 590 (Mich.1986). *See also Dabrowski v. Warner–Lambert Co.*, 815 F.2d 1076, 1078–80 (6th Cir.1987); *Joumas v. Maryland Cas. Co.*, 698 F.Supp. 675, 679 (E.D.Mich.1988); *Nixon v. Celotex Corp.*, 693 F.Supp. 547, 554 (W.D.Mich.1988); *Bouwman v. Chrysler Corp.*, 114 Mich.App. 670, 319 N.W.2d 621, 626 (1982). *Cf. Eliel v. Sears, Roebuck & Co.*, 150 Mich.App. 137, 387 N.W.2d 842, 844 (1985) (testimony that defendant/employer hires more younger people than older people will not, without more, support a claim of age discrimination because "[a] natural consequence of the aging process is that younger employees are constantly replacing older employees as younger employees enter the job market and older persons leave").

These cases, however, are inapposite to this one because, as noted in the summary judgment opinion, Plaintiff's termination was *not* part of a reduction in force in that his duties as the head of the Ford marketing team were assumed by another (younger) employee. *See* 836 F.Supp. at 1362.[6] Moreover, the evidence at trial demonstrated that a single decisionmaker, Mr. Pollack, decided to terminate all of the managers at Mr. Brocklehurst's level at a single meeting, and that all of these managers were over 40. As noted above, these facts, in the Court's opinion, support a reasonable inference that age was a determining factor in PPG's decision to fire Plaintiff.

On the issue of liability, then, judgment as a matter of law, or the ordering of a new trial because the verdict went against the clear weight of the evidence,[7] is inappropriate.

---

6. The Court should note that it did permit PPG to introduce evidence of the overall reduction in force that took place in 1991–92 so as to provide the jury with background information on the decision to replace Plaintiff.

7. Defendant relies upon *Hawley v. Dresser Indus., Inc.*, 958 F.2d 720 (6th Cir.1992), in support of its proposition that if judgment as a matter of law is not warranted, a new trial should be granted because Plaintiff's age discrimination proofs are weak. In *Hawley*, plaintiff was terminated as part of a workforce reorganization that eliminated a total of twelve executive positions at his level. Defendant Dresser was able to find new positions for all of the displaced executives except plaintiff. Nonetheless, both the district court below and the Sixth Circuit believed a new trial (but not a judgment notwithstanding the verdict) was appropriate. The Sixth Circuit reasoned:

> [W]e agree that evidence of the failure to find another position for plaintiff because of his age is very slight and solely circumstantial, while the evidence that the positions to which other executives were transferred were openings which plaintiff could not fill was very strong. As plaintiff conceded at oral argument, the only direct evidence of age discrimination was [plaintiff's immediate supervisor] Hilton's misinterpretation of something plaintiff had said to mean that plaintiff would not object to retiring and that Hilton's opinion was at some time conveyed to Korb [the person who terminated plaintiff]. Hilton testified that he told Korb after plaintiff was advised of the termination; Korb did not remember this conversation. The evidence showed that many persons younger than plaintiff were also terminated during the reorganization and retrenchment. Al-

though there was testimony that Mitchell and Pflaumer were planners [like plaintiff, and that new planner positions were found for them after their displacement pursuant to the reduction in force], the references to them were merely in passing since they did not hold positions at the level of plaintiff. Mitchell was not even mentioned in the arguments to the jury. Defendants established that all executives at the same level as plaintiff who were reassigned had skills or experience that plaintiff did not have. Indeed, plaintiff in his own testimony conceded this for most if not all of them.

958 F.2d at 724–25. The Sixth Circuit concluded that the district court did not abuse its discretion in ordering a new trial:

> The Supreme Court has acknowledged that a district judge has the discretion to grant a new trial if the verdict appears to be against the weight of the evidence.... It is clear that the District court was convinced that a mistake had been committed.
>
> We do not believe that the District Court abused its discretion in granting defendants a new trial. The evidence is especially weak that age was a "significant" factor. The overwhelming weight of the evidence was that age played no part in the failure to place plaintiff in another position.

958 F.2d at 725 (citation omitted).

Here, the Court believes that the evidence of age bias set out above, though not overwhelming, was certainly sufficient to support the jury's verdict of liability, especially when combined with the pretext and credibility findings that the jury must have reached and that this Court has made here. After trying and presiding over numerous employment discrimination cases, the Court is convinced that this is not the kind of case in which the employer deserves a second jury.

The Court will now consider Defendant's other arguments.

### D. THE COURT'S INSTRUCTIONS ON BUSINESS JUDGMENT AND FAIRNESS WERE PROPER STATEMENTS OF THE LAW.

Defendant complains that two instructions given to the jury were erroneous statements of the law. The first challenged instruction reads:

> Your task is to determine whether PPG discriminated against Mr. Brocklehurst. You are not to substitute, however, your judgment for PPG's business judgment or to decide this case based upon what you would have done. However, you may consider the reasonableness or lack of reasonableness of PPG's stated business judgment along with all other evidence in determining whether PPG discriminated or did not discriminate against Mr. Brocklehurst.

This instruction is Michigan Standard Jury Instruction Second ("SJI2d") 105.03. As such, it has been authorized by Michigan courts for just this kind of case. There was no error in its reading to the jury.

The second challenged instruction was drafted by the Court. It reads:

> Please remember that your job is to determine if Plaintiff has proven, by a preponderance of the evidence, that his age was a determining factor in the decision to terminate him. You should not find that the decision was unlawful just because you may disagree with Defendant's stated reasons or because you believe the decision was unfair, so long as Defendant reached its decision without regard to Plaintiff's age.
>
> You may consider the fairness of the decision in determining whether you believe PPG's reasons for the termination; however, unfairness of the decision alone is not enough to find for Mr. Brocklehurst. You must find that his age was a determining factor in the decision to discharge him.

The Court does not believe that it misstated the law in telling the jury that any perceived unfairness in Defendant's actions could be considered by the jury on the question of whether Defendant's alleged non-discriminatory reason for discharging Plaintiff was pretextual. All of the surrounding circumstances of Plaintiff's discharge, including how fairly Defendant treated Plaintiff, are proper facts for the jury's consideration in determining whom it believes on the question of why Plaintiff was fired. The instruction above, then, merely points out to the jury what the proper framework is in which to apply any conclusions it may make on fairness. Furthermore, the instruction specifically cautions the jury that fairness is not a proper grounds for recovery. It was not error to so instruct the jury, and the Court will not grant Defendant's motion for new trial because of this instruction.

### E. DEFENDANT IS ENTITLED TO A REMITTITUR OF THE PAST ECONOMIC DAMAGES AND A JUDGMENT THAT FUTURE DAMAGES ARE NOT APPROPRIATE IN THIS CASE.

Defendant next makes four arguments which this Court will address together. First, Defendant contends that under Michigan law Plaintiff is entitled to only nominal economic damages for his discharge because he was an at-will employee. Second, Defendant argues that it is entitled to partial judgment as a matter of law on the issue of front pay because (1) the Court failed to determine prior to submission of the case to the jury whether front pay was an appropriate remedy, and (2) the Plaintiff had no future economic damages because he had accepted a comparably paying job within two months of his discharge from PPG. Third, Defendant asserts that it is entitled to new trial or remittitur on the damage verdict as a whole because it is excessive. Fourth, and finally, Defendant urges this Court to grant it a partial new trial on the issue of future damages because the Court failed to instruct the jury on reducing future damage awards to present value.

Throughout the trial, the Court told both parties that it reserved the question of both future economic and future emotional damages for itself, and that it would take an

advisory verdict on these matters from the jury. *See, e.g.,* December 6, 1993 Tr. 32. *See also Stafford v. Electronic Data Sys. Corp.,* 741 F.Supp. 664, 665–67 (E.D.Mich. 1990). The Court, therefore, did not make a threshold determination of whether reinstatement was a feasible remedy before submitting the case to the jury, nor did it instruct the jury on reducing any future damage award to present value.

On December 2, 1993—during the course of the trial of this case—the Sixth Circuit handed down its decision in *Roush v. KFC Nat'l Mgt. Co.; supra.* In that case, plaintiff won an award of $100,000 from a jury for her federal age discrimination claim. The district court, however, failed to determine before post-trial motion practice if front pay was a proper remedy because reinstatement was unfeasible. It also did not provide to the jury anything but a general damage instruction; thus, the jury had little guidance on how to calculate any future damages it might wish to award. Defendant appealed, arguing that any award over the proven amount of $24,386 in back pay should be struck down. 10 F.3d at 395, 397–98.

The Sixth Circuit agreed with defendant, and remanded the case to the district court to enter judgment in the amount of $24,386. At the outset, the court stated:

> We have previously held that determination of the amount of an award of front pay is a jury question. Specifically, in *Fite v. First Tennessee Prod. Credit Ass'n,* we stated that
>
>> FTPCA's contention that front pay is not a question for the jury is at odds with the authority of this circuit. Indeed, *Davis[ v. Combustion Eng'g, Inc.,* 742 F.2d 916 (6th Cir.1984)]* was an action where the jury determined the amount of front pay. In upholding the award of front pay, we noted that "based upon such determinations by the trial court, this court holds that the approval

of the prospective damage award of $88,-800 *as returned by the jury* was not an abuse of discretion." *Davis,* 742 F.2d at 923 (emphasis added). Thus we find that FTPCA's argument has no merit.

> 861 F.2d 884, 893 (6th Cir.1988). However, we have also held that determination of the propriety of an award of front pay is a matter for the court. In *Davis,* we emphasized "that an award of front pay must be governed by the sound discretion of the trial court and may not be appropriate in all cases." 742 F.2d at 923.[8]

*Roush,* 10 F.3d at 398 (footnote omitted).[9]

The court continued:

> The district court's determination on whether an award of front pay is appropriate, and its articulation of the reasons why such an award is or is not appropriate, must ordinarily precede its submission of the case to the jury. This case highlights the most obvious reason why: because the jury must be instructed on what factors to consider in determining the amount of front pay, assuming that the court finds such an award is in order. We have previously stated that awards of front pay must be guided by consideration of certain factors, including
>
>> an employee's duty to mitigate, "the availability of employment opportunities, the period within which one by reasonable efforts may be reemployed, the employee's work and life expectancy, the discount tables to determine the present value of future damages and other factors that are pertinent on prospective damage awards."

> *Shore v. Federal Express Corp.,* 777 F.2d 1155, 1160 (6th Cir.1985) (quoting *Koyen v. Consolidated Edison Co.,* 560 F.Supp. 1161, 1168–69 (S.D.N.Y.1983)).

*Roush,* 10 F.3d at 398–99.

The court then reasoned:

---

**8.** The Michigan Court of Appeals announced an identical rule leaving the question of the propriety of a front pay award in an Elliott–Larsen discrimination case to the sound discretion of the trial court in *Riethmiller v. Blue Cross & Blue Shield of Michigan,* 151 Mich.App. 188, 390 N.W.2d 227, 231–33 (1986).

**9.** With all due respect to the Sixth Circuit, this Court, for the reasons stated in *Stafford, supra,* does not believe that the *amount* of front pay to be awarded was clearly a jury question until *Roush* was handed down.

While ordinarily we would remand the issue of front pay to the district court for a more detailed articulation of the reasons for its action (and, alternatively, for a new trial on the issue of front pay), we conclude that a remand of this case would serve no purpose, because the record simply does not support an award of front pay in any amount. Roush has failed to articulate how the evidence in this case supports an award of front pay in any amount, and we fail to see the justification for such an award. Within approximately two months of her discharge from KFC, Roush accepted a full-time position with Bauer–Sharp Company, at a salary comparable to that which she had earned at KFC (albeit without benefits). Although by the time of trial her hours at Bauer–Sharp had been reduced to part-time for apparent business reasons, Roush voluntarily chose not to seek alternative or supplemental employment in order to make up for this reduction in her income, preferring instead to receive social security benefits. Based upon these facts, we conclude that as a matter of law, front pay was not appropriate in this case. In its order on post-trial motions, the district court found that an award of front pay was appropriate because Roush had contended that she would remain in the work force on an extended basis due to her need to provide for a handicapped child. However, her intentional limitation of her income in order to continue receiving social security benefits terminates any entitlement to front pay which she may otherwise have had. *See Dominic v. Consolidated Edison Co. of New York, Inc.,* 822 F.2d 1249, 1258 (2d Cir.1987) (plaintiff's failure to mitigate may foreclose availability of front pay).

*Roush,* 10 F.3d at 400.

■ Defendant argues that the Court erred in not determining whether reinstatement was feasible until it entered judgment in this action, and that it should, therefore, order a partial new trial on the issue of future damages. To this, the Court can only respond that the *Roush* decision on which Defendant relies was not issued until this trial was well underway, and that neither the Court nor the parties were aware of it until after the close of trial. In light of this fact, the Court does not believe that this decision alone warrants a partial new trial on future damages.

Turning now to the damages that Plaintiff demonstrated at trial, the Court must say that the proofs put on by Plaintiff were sketchy.[10] However, the Court can glean these facts, taken in the light most favorable to Plaintiff, from the record:

* At the time of his termination, Plaintiff was earning $77,200 a year in salary at PPG. November 22, 1993 Tr. 75–76.

* He had received, on average, a 9.2% wage increase each year that he was at PPG. *Id.* at 112.

* He had received, on average, a yearly bonus of $14,583 (rounded down) for the six years prior to his termination. *Id.* at 113; *see also* November 24, 1993 Tr. 50–51.[11]

* His monthly benefit package from PPG, including medical insurance, life insurance, accident and death insurance, long-term disability insurance, and 401(k) savings plan benefits, was $597 (rounded up), or $7,164 per year. Plaintiff's Ex. 13, p. 10. As part of this package, he was apparently entitled to a $0.50 PPG contribution for every dollar he contributed to the 401(k) plan, up to 6% of his salary. Plaintiff's Ex. 38.

* His vested pension at PPG at the time of his termination was $554 a month, payable at the time he turned 66. November 22, 1993 Tr. 123. He would have been entitled to $3,054 (rounded down) per month in pension benefits upon re-

---

**10.** This was, perhaps, in large part due to the fact that Plaintiff was barred from introducing a damages expert because his counsel failed to timely list that expert as a witness.

**11.** Plaintiff has argued that the Court should take into account the bonuses given to Mr. Johnson,

Plaintiff's replacement, in determining what bonuses Plaintiff would have received had he not been discharged. However, the Court believes that Mr. Brocklehurst's own bonus history is the most concrete indication of what bonuses he would have received in the future.

tirement at age 66 had he stayed with PPG until that time. Plaintiff's Ex. 13, p. 9.

* He had two unexercised PPG stock options of undetermined value. November 22, 1993 Tr. 120–21.

After Plaintiff left PPG, he received the following compensation:

* In 1992, he received $43,300 in severance from PPG. November 22, 1993 Tr. 116.

* He obtained a job with Kay Automotive Graphics ("Kay") in April of 1992, which paid him a salary of $85,500 a year. Plaintiff received $63,300 in 1992 from this job. *Id.* at 117.

* In April of 1993, Plaintiff received a six percent wage increase at Kay, raising his salary to $90,630. *Id.* at 117–18.

* Plaintiff and his family are receiving medical benefits through his wife's employer, and this fact resulted in an additional $5,000 in his salary from Kay. November 24, 1993 Tr. 101–02.

* In terms of benefits, Kay offered a profit-sharing bonus plan benefit of up to $2,500 a year. Plaintiff received $1,800 in 1993 through this program. November 22, 1993 Tr. 117–18.

* Kay matches 401(k) contributions up to $250 to $300 a year. *Id.* at 119. Kay also provides life insurance and long-term disability insurance benefits, in unspecified amounts. November 24, 1993 Tr. 53, 101.

With respect to emotional damages, Plaintiff testified that his discharge was humiliating, especially when he had to tell his family that he had lost his job. November 22, 1993 Tr. 127–28. He added that a past problem with ulcers returned, and that he took medication from his doctor for it. *Id.* at 131–32. Moreover, Plaintiff had to apply for unemployment, which was also embarrassing to him. *Id.* at 132. Plaintiff's counsel argued in addition that Plaintiff's new job at Kay required him to meet with many of the same contacts he had when he worked for PPG, thus furthering his humiliation. December 3, 1993 Tr. 134.[12]

■ Based on a review of the record, the Court holds that some remittitur of both the economic and emotional damages awarded to Plaintiff is appropriate. As an initial matter, Plaintiff's back pay award could be no greater than $22,818. For calendar year 1992, Plaintiff is not entitled to any past economic damages by virtue of his testimony that in that year he earned $106,600 between his job at Kay and PPG's severance payment. This amount exceeds the amount that he would have received at PPG if this Court includes his $77,200 salary, plus a 9.2% raise, plus a $14,583 bonus,[13] plus the $7,164 in hard benefits that he would have received.[14]

For calendar year 1993, Plaintiff would be entitled only to a maximum of $22,818. This figure represents his $77,200 salary at PPG following two raises, plus a $14,583 bonus, plus $7,164 in benefits, minus his $88,937 salary at Kay (computed at $85,500 for the first third of the year and $90,630 for the last two-thirds), minus his $1,800 bonus at Kay, and minus Kay's $250 matching contributions to its 401(k) plan. Thus, the jury's award of $77,100 in back pay was clearly unsupported

---

12. The Court, however, was unable to find any record evidence in support of this claim.

13. Defendant argues that the proofs show Plaintiff would not have been entitled to any future bonuses because his salary would have been redlined for a failure to properly handle a 1% price reduction granted to Ford in 1991. Defendant's Brief, p. 16 n. 10. However, the jury was free to discredit the testimony on which this argument is based. Furthermore, the case on which Defendant relies to assert that any award of damages for bonuses is *per se* speculative limited its holding to the facts of that case. *See Neufeld v. Searle Labs.*, 884 F.2d 335, 342 (8th Cir.1989). Because the evidence of bonuses at PPG indicated that they occurred regularly and in substantial amounts both in good years and bad (e.g., Plaintiff received his 1991 $13,500 bonus after his termination and despite the fact that PPG was in the midst of its downsizing effort), the Court believes the jury properly included the bonuses in its damage calculations.

14. There is simply not enough evidence of what Plaintiff would have been entitled to under his unexercised stock options to award any kind of relief, backwards or forwards, on this damage claims. Similarly, there was no evidence of what annual contributions PPG would have made to Plaintiff's pension account in order to award any damages for the loss of this benefit.

by the evidence, and should be remitted to $22,818.[15]

With respect to past emotional damages, although the $500,000 verdict for this category of relief was high in view of the injuries claimed, the Court believes that it was within the jury's discretion to reach this amount from the evidence before it. The jury had an opportunity to hear Plaintiff describe to them the frustration and humiliation he felt as a result of his discriminatory discharge, and to observe the callousness with which Defendant conducted itself at the time of the discharge. Plaintiff correctly points out that other cases have upheld similar past pain and suffering awards. *See Jenkins v. Southeast Michigan Chapter, Am. Red Cross,* 141 Mich.App. 785, 369 N.W.2d 223, 230 (1985) (upholding $500,000 pain and suffering award in an Elliott–Larsen race discrimination suit). *See also Moody,* 915 F.2d at 210–11 (refusing to mandate a remittitur of a $150,000 pain and suffering award in an Elliott–Larsen age discrimination case). In light of this precedent, the evidence of record, and the Court's inclination to defer to juries made up of the parties' peers on such matters, the Court will uphold the $500,000 past pain and suffering verdict.

Turning now to the issue of front pay and future non-economic damages, after a careful review of the record and much reflection, the Court finds that neither would be appropriate remedies for this case.[16] In terms of front pay, it is undisputed that Plaintiff obtained within months of his discharge a better-paying job at Kay Automotive Graphics. While the benefits of this job were not as great as those he had enjoyed at PPG, *Roush* teaches that this is not controlling on the question of the appropriateness of an award of front pay. 10 F.3d at 400 (noting that Ms. Roush obtained similar employment after her discharge, albeit a job without *any* benefits). Moreover, the discrepancy in pay increases and bonuses at the two companies does not carry much weight given the volatility of the automotive market in which both PPG and Kay operate, as shown by the proofs at trial. Plaintiff has done an admirable job in putting his discriminatory discharge from PPG behind him and continuing to pursue a successful career in the automotive marketing field. Under these circumstances, the Court does not believe that it would be appropriate to further compensate Plaintiff with an award of front pay.

Similarly, an award of future pain and suffering damages is wholly unsupported by the evidence. There was no testimony indicating that Plaintiff ever sought psychological or emotional counseling or that any counsellor ever stated that his emotional injuries were of an ongoing nature. Moreover,

**15.** Defendant urges this Court to hold that at-will employees may only recover nominal economic damages for discrimination claims under Michigan law. There does seem to be a conflict in Michigan Court of Appeals decisions on whether at-will employees can receive more than nominal economic damages for their employment injuries. A number of non-employment discrimination cases have held that only nominal damages are or should be recoverable in breach of employment contract actions. *See e.g., Phillips v. Butterball Farms Co.,* 201 Mich.App. 663, 506 N.W.2d 606, 608–09 (1993) (holding that economic damages for retaliatory discharge after the filing of a workers compensation claim could be only nominal for an at-will employee, and noting that "[a]ny other remedy for the at-will employee, or penalty against the employer, must be provided by the Legislature"), *ap. granted,* 445 Mich. 932, 521 N.W.2d 15 (1994); *Sepanske v. Bendix Corp.,* 147 Mich.App. 819, 384 N.W.2d 54, 59–60 (1985) (holding that a non-wrongful discharge case alleging breach of an employment contract would warrant only nominal damages

because employee had no legitimate expectation of permanent employment), *ap. denied,* 433 Mich. 914 (1989). However, Michigan has enacted a comprehensive employment discrimination statute in Elliott–Larsen, and Michigan courts have consistently held that damages which presume continuing or even permanent employment are in some cases appropriate under this law. *See Riethmiller, supra,* 390 N.W.2d at 233 ("The fact that [future] damages may be speculative should not exonerate a wrongdoer from liability.").

Absent a clearer direction from the Michigan legislature or courts on whether only nominal economic damages are available in an Elliott–Larsen discrimination suit, this Court will adhere to the principles announced in *Riethmiller* and hold that more than nominal back and front pay damages, if proven, are available when an at-will employee is the victim of discrimination.

**16.** To the extent that the Judgment entered on February 4, 1994, holds that an award of any future damages is warranted for this case, it is hereby superseded by this opinion.

given the judgment of this Court, after submission to a jury, that PPG discriminated against Plaintiff, there really can be no future emotional damages. Should Plaintiff suggest that he has a permanent black mark on his employment record, the Court would merely respond by noting that Plaintiff can explain to his current or subsequent employers and business contacts that PPG broke the law by discharging him.

For these reasons, then, the Court hereby orders that the $1,527,100 judgment entered in this case be remitted to $528,818. Plaintiff is free to reject this remittitur; however, such a rejection will force this Court to order a new trial on damages. *See* 11 Charles A. Wright, Arthur R. Miller & Frank W. Elliott, *Federal Practice & Procedure* § 2815, at 100, 104 (1973 & Supp.1994).

### F. *PLAINTIFF SHOULD BE AWARDED HIS PROVEN COSTS IN THIS ACTION.*

It is undisputed that as the prevailing party, Plaintiff is entitled to his provable costs to the extent that the Court deems the award appropriate. *See* M.C.L. § 37.2802. Plaintiff has submitted a bill of costs in the amount of $2,358.15. The Court finds these costs reasonable and appropriately incurred for the preparation and conduct of the trial of this matter. Therefore, it orders an award of costs to Plaintiff in the amount of $2,358.15.

### III. *CONCLUSION*

For the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's renewed motion for judgment as a matter of law or for new trial is DENIED.

IT IS FURTHER ORDERED that the verdict in this case be remitted to the amount of $528,818. Plaintiff is free to reject the remittitur. If he does so, this Court will order a new trial on damages.

IT IS FURTHER ORDERED THAT Plaintiff shall be awarded costs in the amount of $2,358.15.